We'll move to case number four of the morning, NBA Properties and Others v. is it HANWJH? Thank you. It's you. Good morning.  Good morning, Your Honor. It's my pleasure here representing Appellant Han Chi, HANWJH, in this case. The appellant respectfully asks his court to reverse the district court decision and finds that the district court lacks personal jurisdiction over appellant, an overseas online seller who only sold one single item to this district and the single transaction was initiated by the appellees for the sole purpose of creating personal jurisdiction and bringing a lawsuit against this online seller, appellant in this case. In fact, the entirety of appellant's contact with Illinois is the same transaction made by the appellees. As the Supreme Court pre-stated in Warden v. Fiore, due process requires that a defendant be held into the court in a forum state based on his own affiliation with the state, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the state. Here, the uncontroverted evidence is that setting aside the appellees' transaction in an attempt to create jurisdiction, there is no relevant facts in context because the only sole link between the appellant and Illinois was the same transaction made by the appellees. It is— Let's change the fact pattern slightly. Okay? And let me hypothesize a different fact pattern. Suppose that every day of the year there was an acquisition of one of these items of clothing that was alleged to violate the Lanham Act to be a counterfeit. So there were 365 purchases of NBA jerseys or something like that. Would you characterize those as sham transactions? So suppose the instruction was given to counsel, buy one every day of the year from this defendant. Yes, Your Honor. Yes or no. At this courtroom in Curry, there are 767 sales to Illinois residents provide solid evidence that the defendant has purposefully exploited the Illinois market. Right, but if my hypothetical is a sham transaction, is HEMI group correctly decided? Because in HEMI group, that was the cigarette case, right? And the cigarettes were ordered not by smokers, but by the Illinois Department of Revenue. And so it seems to me that if we want to talk about sham transactions, the way you use that term, that the transactions that the Illinois Department of Revenue engaged in would be sham transactions. The Department of Revenue was buying the cigarettes for purposes of law enforcement, not because they were buying cigarettes for their employees or anything. Your Honor, but HEMI group is distinguishable from the present case. Since the present case, there is only one single sale. Right, right, right. I think what that, in my mind, what that shows is that it doesn't have anything to do with whether it's a sham transaction or a legitimate transaction. The point that you're making, I think, is it's one transaction. It doesn't have to be a sham transaction. It's one. You are correct, Your Honor. So is that sham doesn't have anything to do with it? I would say only one transaction was an insufficient link to drag the defendant into the jurisdiction to the forum state. As this court wrote in the advanced tactical versus real action pinball, the court has held that the creation, if plaintiff could bring suit literally in any state where the defendant shipped at least one item, this would be a creation of de facto universal jurisdiction. And this will run counter to the well-established jurisdictional principles. It is also undisputed that appellant's conduct was not directly, much less expressly aimed at Illinois, because there is no evidence in this case suggesting that appellant's Amazon page, despite being interactive, targets or is in any way directed toward Illinois. At most, the Amazon page operated by the appellant was accessible to Illinois as well as everywhere else. As this court held in B2LLC versus Avinov, merely operating an interactive online website should not subject defendant into this court. It is undisputed that a police initiated and purchased alleged infringing product from appellant. Other than the single transaction to a police, there is no relevant, there is no evidence that appellant ever sold or shipped any alleged infringing product to Illinois. The single transaction to Illinois was not specifically directed contact, but instead occurred only because a police unilateral act and inducement to ship. But for appellants themselves trying to create jurisdiction here, appellant has no connection to Illinois. There was no individualized targeting of Illinois. Such inducement by a police for the sole purpose to establish personal jurisdiction should not be encouraged. Therefore, for the foregoing reasons, appellant respectfully requests this court reverse district court's decision and find the district court lacks personal jurisdiction over appellant. I'd like to reserve the rest of my time for rebuttal. Yes, of course. Okay, very well. Thank you. Mr. Gaudio, good morning. We'll hear from you. May it please the court, Justin Gaudio for appellees. The district court correctly found the defendant's series of voluntary choices to establish direct commercial contacts with Illinois was purposeful. There's no mechanical formula or sales threshold for establishing jurisdiction. In this case, plaintiff's prima facie case for personal jurisdiction is established by defendant's multiple deliberate actions leading up to and following the sale of counterfeit MBA products to Illinois. What kind of an arrangement did the defendant have with Amazon? Did they simply, in effect, rent space on the Amazon website? What was their relationship with Amazon? That's correct. So Amazon sells products two different ways. They sell products directly, which in the physical context, think a store like Target, where they sell lots of different products directly. They also allow third-party sellers to use their platform to sell products directly. So if Amazon's a mall operator, in this case, defendant is operating a store in that mall. I see. And that's what we have here. Direct sales where defendant obtained commercial quantities of counterfeit MBA products, the U.S. Baseball League. Does the record show how, for what length of time, this business was on Amazon selling these products? I'm not sure if it does. Do we have any idea how many different products it sold of this nature, products of this nature? They offered 41 different products of this nature in five different sizes. So over 200 different products were offered for sale. Was this a website where the customer shows the address, especially with respect to the state? Was there a list of address states? Did you hit on one or did you have to type in the address? When you visit the page, and this is shown in our brief on page 37, it explicitly shows that the customer is from Illinois and the zip code is included in there, indicating that defendant set up the store to directly sell products to Illinois and advertise those products to Illinois, agreed to accept orders from Illinois residents and to fulfill those orders. Is there a way by which a plaintiff like this could have excluded certain states and indicated on the website that it would not accept orders from certain states? I believe so. For example, I've seen listings, and I don't know if this is in the record, where Hawaii and Alaska are excluded because it's more expensive to ship there, or California might be excluded due to additional regulations there. And in setting up the page, I do know that defendants would affirmatively decide where they're going to sell product, and there was nothing on the page indicating that they would not ship to Illinois. The argument Ms. Ju makes resonates with me on the one transaction point. And the point that she's putting emphasis on is one that distinguishes this case, does it not, from cases like Hemi and Curry? There's multiple transactions in those cases. You lean into those cases, but I think I don't know how they can support you. There's multiple transactions. Here you have one transaction, and it seems to me that it's in very close keeping with Matlin. So how in your view do we get onto the Hemi-Curry side and not on the Matlin side? So first, the reasoning in Hemi and Curry are the same here, in that the planning, preparation, and acts leading up to and following the sale collectively are what establish the jurisdiction. But both opinions place emphasis on the volume. And Matlin is distinguishable for a few reasons. First, the product was not related to the litigation. That involved a patent licensing scheme, and the product that was sold was unrelated to the claims in the lawsuit. Additionally, those contacts occurred after the lawsuit was initiated. So they're contacts that happened after the case was filed. But this case is like Matlin in that you have one transaction, not more than one, and it's initiated by plaintiff's counsel. Well, it's related to the lawsuit, and that happened before. And it's also defendants offering for sale commercial quantities of this product, 205 different varieties. Right, hence that hypothetical I was giving your colleague about if you bought one every day, the case might be different. The case might be Hemi. So then, it was clear defendant was intending to do ongoing business with Illinois. The other thing with Matlin is... And what law, what case in the personal jurisdiction line of cases makes that intent relevant? Has the Supreme Court talked about that in the specific jurisdiction cases? Ultimately, the test is whether they purposely availed themselves to the foreign states such that it would be reasonable to be hauled in the court. Right, and as part of discussing purposeful availment or minimum contacts or anything else, has the court talked about intent, commercial intent? They have in both Hemi and Curry where they discussed whether it was foreseeable for a defendant to be hauled in the court here. And in this situation, in addition to the minimum contacts, you have MBA products for sale where there's a team in the district. It's Illinois, the sixth largest state, and that makes this a reasonable forum for a China-based defendant who, as far as they're concerned, is not subject to jurisdiction anywhere in the United States. And ultimately, the test is one of fairness. When they set up this Amazon store, knowing that they were going to offer for sale hundreds of counterfeit MBA products to the United States, they knew they could be subject to jurisdiction here. And if you look at the record, they actually blurred the MBA logo on certain images in an attempt to try to evade detection and frustrate enforcement efforts. And this shows that they knew there were consequences for getting caught, so they tried to avoid that from happening. So they knew exactly what could happen when they offered those products for sale, including Illinois. Despite that, they set up the website to accept orders to any Illinois consumer. They then packaged, shipped, and sent the product, sent a confirmation email, and they were willing to sell as many products as consumers were willing to buy. This was a—the substantive count here was what? Trademarked. Am I right? Yes. Trademarked counterfeiting. And when is that cause of action complete? What do you have to prove to show that? The defendant is likely to cause consumer confusion with respect to the advertising offer for sale or sale of the goods. Okay. So is the sale necessary for the completed violation? It is not. The advertising and offer to sale are both distinct causes of action. So in other words, selling or actually showing the product, offering for sale, can complete the offense, right? That's correct. In this case, it confirmed that the product was counterfeit and confirmed the defendant's intentions into selling. That's what it did. The fact of the matter is it's the fact that this company was advert—putting this stuff out there on the web for the American consumer that created the offense, right? That's correct. That's correct. And circling back to Matlin, another distinguishable point is that language in there is supported by Russell and DeCastro, which are both stream-of-commerce cases. And those are cases where the manufacturer sold the products to distributors and it was distributors that are selling the products into the United States. The defendants weren't directly selling them into the United States like here. And that makes another reason why Matlin's much different because there's not direct sales like Heming and Curry. Other circuits, including the 2nd and Chloe and the 11th and Louis Vuitton, have found that looking at all the contacts leading up to and following a single-sale counterfeit product over the Internet is sufficient to establish a prima facie case for jurisdiction. And this reasoning in this case is consistent with that, where it's the acts leading up to the sale taking place and following that sale collectively that show and establish the prima facie case. I'm very much aware that fundamental fairness to the defendant is the prime focus of these cases, but doesn't the case law also talk about the interest of the state in acting as a forum for the protection of its consumers? That's correct. A big part of trademark law is that trademark owners are required to police their marks both to protect the goodwill in those marks as well as consumers from being duped into purchasing counterfeit products. That's a big part of this and why the NBA takes these actions to protect those consumers and eliminate counterfeits online, which, as is shown in the record, is a huge problem right now. So Illinois, as a member of the union, does have an interest in serving as a forum here? That's correct. The sixth largest state in a significant population, including with an NBA franchise here, shows they have a very strong interest in establishing... I see. Okay, very well. Thank you very much. Thank you, Your Honor. We request that you affirm the district court decision. Ms. Yu, we'll give you some rebuttal. You have some rebuttal time left. You have four minutes. Good morning, Your Honor. Thank you for your time. I'd like to address a couple points that a police just addressed. First of all, by listing the infringing product does not mean sold or have targeting specifically to Illinois. And to allow a police to hold a patent to the forum would create no limitation in that any online sellers could be held into any district court or states where the defendant appellant sold at least one item to that state. Of course, you could, in your website store, say you would not accept orders from a particular state. Could you not? In terms of what Your Honor just said and what the appellant's counsel just represented regarding the exclusion of other states, this is not the case here. There is no evidence. I understand it's not the case here, but you could have. You could have said that you would not accept orders from the state of Illinois. Yes, Your Honor, but... And you didn't do that. No, because this is not the case here and there is no evidence showing otherwise. In addition, unlike to the case cited by the appellant, the stream of commerce should not be applied here because there is no connection between the appellant and Illinois aside from the single transaction manufactured by the appellees. Therefore, for the foregoing reasons, appellant respectfully requests the court find that the district court lacks personal jurisdiction over appellant. Can I ask you one question? It may seem unrelated. Has your client been sued in New York? I don't think so, Your Honor. On a claim like this? No. Thank you. Thank you, Your Honor. Okay, we'll take the appeal under advisement with thanks to both counsel.